UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
   WINNIFRED FOUCHE,

                                Plaintiff,

            -against-

   ERIC T. SCHNEIDERMAN, et al.,

                                Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-752 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

On February 2, 2014, pro se Plaintiff Winnifred Fouche initiated this civil rights action pursuant to 42 U.S.C. § 1983, seeking declaratory and injunctive relief, as well as compensatory damages, stemming from Defendants' attachment of her property in connection with ongoing state court civil forfeiture proceedings. (Compl. (Dkt. 1).) Defendants are each employees of the New York State Attorney General's Office.[1] (Id. ¶ 4.)

Defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Not. of Mot. to Dismiss the Compl. (Dkt. 10)), and Plaintiff opposed the motion (Pl. Br. (Dkt. 10-4)). By Order dated October 15, 2014, the court referred the motion to dismiss to Magistrate Judge Lois Bloom for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (See Oct. 15, 2014, Order (Dkt. 11).)

On February 2, 2015, Judge Bloom issued an R&R recommending that the court grant Defendants' motion to dismiss in its entirety. (R&R (Dkt. 12) at 1.) Judge Bloom recommended that the court abstain from hearing Plaintiff's claims for equitable relief pursuant to Younger v.

---

[1] Specifically, Plaintiff brought suit against prosecutors and investigators within the Attorney General's Office that have been directly involved in the forfeiture proceeding, as well as leaders within the Attorney General's Office, including Attorney General Eric T. Schneiderman. (See Compl. ¶¶ 5-13.) See also infra Part II.B.

1

Harris, 401 U.S. 37 (1971), and its progeny. (Id. at 4-6.) With respect to Plaintiff's damages claims, Judge Bloom determined that all Defendants are entitled to either absolute or qualified immunity, and that for those Defendants where only qualified immunity applies, Plaintiff has failed adequately to allege a violation of a clearly established right. (Id. at 6-8.) Plaintiff subsequently filed an objection to the R&R, and Defendants filed a memorandum in support of the R&R. (See R&R Obj. ("Pl. Obj.") (Dkt. 13); Defs.' Resp. to Pl.'s Obj. to the R&R ("Defs. Resp.") (Dkt. 14).) For the reasons discussed below, the court ADOPTS IN FULL the R&R, and accordingly, DISMISSES the Complaint.

I.  **Standard of Review**

In reviewing a magistrate judge's R&R, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. To obtain this de novo review, an objecting party "must point out the specific portions of the report and recommendation to which [that party] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R]."). If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008); see also Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002). Portions of an R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at *2.

2

Where a pro se party objects to an R&R, "the court reads his objections 'liberally and will interpret them to raise the strongest arguments that they suggest.'" Velasquez v. Metro Fuel Oil Corp., 12 F. Supp. 3d 387, 398 (E.D.N.Y. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 780 (2d Cir. 1994)). However, a court "need not argue a pro se litigant's case nor create a case for the pro se which does not exist." Molina v. State of N.Y., 956 F. Supp. 257, 259 (E.D.N.Y. 1995).

Under this standard, the court finds that Plaintiff has put forward specific objections to the R&R, and therefore performs a de novo review of these objections. With respect to any portions of the R&R that are not objected to, the court reviews for clear error, and finds none. Although Plaintiff repeats several of the arguments made before Judge Bloom (and at times attempts to introduce new, conclusory allegations), the court construes her brief to object to Judge Bloom's core holdings that (1) Younger abstention applies to the equitable claims; (2) Defendant prosecutors are entitled to absolute immunity; and (3) with respect to Defendant investigators, Plaintiff has failed to allege facts sufficient to overcome their qualified immunity.

## II. Discussion

The court assumes familiarity with the facts of the case, and adopts the summary of the relevant factual allegations included in the R&R. (See R&R at 1-3.) In brief, Plaintiff brought this action against employees of the New York State Attorney General's Office, alleging that Defendants violated her constitutional rights by commencing a civil forfeiture proceeding in New York Supreme Court against her, relating to alleged criminal proceeds of Medicaid fraud committed by Plaintiff's daughter. (See generally Compl.) As a result of the civil forfeiture proceeding against Plaintiff, Defendants attached Plaintiff's assets, including her interest in her home, bank accounts, and credit cards. (See id., Exs. 2-4 (state court filings: Order of

3

Attachment, Aff. of Need for Emergency Relief, and Mem. of Law in Supp. of App'n for Provisional Remedies).) Plaintiff seeks declaratory and injunctive relief requiring Defendants to remove the attachment, as well as civil and punitive damages. (Id. ¶¶ 37-38.)

### A.     Equitable Claims: Abstention

Judge Bloom correctly applied Younger and its progeny in determining that Younger abstention applies to this action. (See R&R at 4-6.) In Younger, the Supreme Court held that a federal court should decline to enjoin a state court criminal prosecution, absent bad faith, harassment, or a patently invalid state statute. 401 U.S. at 53-54. Younger abstention has been extended to civil forfeiture proceedings. See Sorodsky v. U.S. Attorney, No. 12-CV-4420 (ARR) (LB), 2012 WL 4891697, at *5 (E.D.N.Y. 2012); Mackey v. Prop. Clerk of the N.Y. City Police Dep't., 26 F. Supp. 2d 585, 592 (S.D.N.Y. 1998). Cf. Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) ("The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved. The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature. . . ." (internal citations omitted)).

Judge Bloom explained that the ongoing state civil forfeiture proceeding implicates important state interests, and that it in fact provides Plaintiff (a "non-criminal Defendant" in the proceeding, see N.Y. Crim. Proc. Law § 1310) an adequate venue to raise her federal, constitutional challenges. (See R&R at 5-6 (collecting state civil forfeiture proceedings in which parties to the proceeding raised various constitutional arguments, including those asserted by Plaintiff here).) Furthermore, Judge Bloom correctly determined that Plaintiff failed adequately to allege that Defendants in this action initiated the civil forfeiture proceeding in bad faith, which would allow the case to remain in federal court as an exception to Younger abstention. (Id. at 6.)

Plaintiff objects to the application of Younger, arguing that it "is not a license for prosecutors to commit [an] unlawful act under color of law and then whine[] that a suit in law to redress federal protected rights must be litigated in state court. Defendants are forum shopping in a state court where [P]laintiff does not stand a chance." (Pl. Obj. at 4.) Plaintiff is correct that the Younger doctrine does not authorize state officials to knowingly violate an individual's rights and then avoid the jurisdiction of a federal court; however, beyond general, conclusory allegations, Plaintiff has failed to point to any indicia of bad faith on the part of Defendants. (See R&R at 6.) Indeed, in the civil forfeiture proceeding, Defendants relied on a sworn affidavit from an investigator that Plaintiff used credit cards connected to the illicit proceeds of her daughter's criminal businesses. (See id. at 6; Compl., Exs. 3 ¶ 5, 5 ¶ 33.)

Nor has Plaintiff made any specific allegations regarding why New York state court is a forum in which she "does not stand a chance." (Pl. Obj. at 4; see also Defs. Resp. at 4 ("[Plaintiff's] contentions that she will be denied a fair trial in the state court forfeiture action are of no moment: because she has offered nothing in support of her bald conjecture.").) Plaintiff claims that "[p]rosecutors and investigators are known to commit perjury," and that Judge Bloom should not have relied on "the self serving affidavits of [D]efendants Patricia [Iemma] and Dominick DiGennaro . . . ." (Pl. Obj. at 2.) These conclusory allegations, however, do not affect the Younger analysis.

Finally, Plaintiff dedicates the majority of her brief to arguing the lack of merit of the civil forfeiture proceeding brought against in her state court. (See, e.g., Pl. Obj. at 4 ("Plaintiff does not have any connection to the alleged proceeds from a non existing Medicaid criminal enterprise."); id. at 3 ("What [Defendants] failed to inform the Kings County grand jury was that it was board certified medical doctors that wrote the prescription for a pediatric formula which

5

was supported with a letter of medical necessity."); id. at 2 ("[Plaintiff's daughter] used [the $40,000] to pay for an Audi car charged on her Corporate American Express card and not for any mortgage as was falsely alleged by [D]efendants.").) In light of Plaintiff's ability to raise her substantive and constitutional defenses in the state court proceeding, and Plaintiff's daughter's ability to dispute the criminal claims against her in the state court proceeding, these allegations do not change the Younger analysis. See, e.g., Sorodsky, 2012 WL 4891697, at *5.

Abstention by a federal court under these circumstances is proper; the court therefore abstains from hearing Plaintiff's claims for equitable relief.

### B. Damages Claims: Absolute and Qualified Immunity

With respect to Plaintiff's monetary damages claims, Judge Bloom first considered whether Defendants are entitled to absolute immunity; she concluded that they are all absolutely immune as state officials sued only in their official capacities. (See R&R at 7.) Plaintiff does not object to this conclusion, but, as noted by Judge Bloom, indicated that she in fact intended to sue Defendants in their individual capacities. (Pl. Opp'n to Mot. to Dismiss (Dkt. 10-4) at 5; see also Compl. ¶ 14 ("Each [D]efendant is sued individually and in his/her official capacity.").) In response to this argument, Judge Bloom correctly held that even if sued in their individual capacities, the Defendant prosecutors are still entitled to absolute immunity from suit for decisions involving whether to bring charges and the performance of litigation-related duties. (See R&R at 7 (citing Ying Jing Gan v. City of New York, 996 F.3d 522, 536 (2d Cir. 1993)).)

With respect to those Defendants who are investigators (and not prosecutors) in the Attorney General's Office, Judge Bloom determined that they are entitled to qualified immunity, and that Plaintiff failed to allege that the Defendant investigators violated Plaintiff's clearly established rights. (Id. at 7-8.) See also Luna v. Pico, 356 F.3d 481, 490 (explaining that under

6

the doctrine of qualified immunity, "a defendant is not liable if he did not violate clearly established law or it was objectively reasonable for him to believe that he was not violating clearly established law" (emphasis in original)). Plaintiff alleged in the Complaint that "Defendants deliberately delivered false evidence and perjured testimony to the grand jury that [indicated] [Plaintiff's] daughter alluding that the proceeds from her non-existing Medicaid fraud scheme was utilized in purchasing [Plaintiff's] home (Compl. ¶ 20), and that the evidence was false because Plaintiff purchased her home in 2004, years before the alleged crimes took place (id. ¶¶ 26-27). Plaintiff ignores, however, that the investigator's affidavit did not assert that the illicit proceeds were used to pay for Plaintiff's initial purchase of her home in 2004, but rather, for subsequent mortgage payments made between May 17, 2011, and December 17, 2012. (See R&R at 8; Compl., Ex. 5 ("Iemma Aff."), ¶ 64.) Beyond the conclusory allegations in the Complaint, Plaintiff fails to allege that Defendant investigators violated her clearly established rights or that it was not objectively reasonable for Defendants to believe that they were not violating clearly established law. (See R&R at 8 ("[Q]ualified immunity may be granted on the facts alleged in a complaint '[i]f a reasonable officer could have believed that the challenged conduct was lawful at the time of the violation.'" (quoting Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004))).) As discussed above, Plaintiff now claims in her objection to the R&R that $40,000 in illicit proceeds identified by the investigators were used by Plaintiff's daughter to purchase a car, "and not for any mortgage as was falsely alleged by [D]efendants." (Pl. Obj. at 2.) Again, Plaintiff's argument goes to the merits of the state court civil forfeiture proceeding, and does not change the conclusion that Defendant investigators are entitled to qualified immunity with respect to Plaintiff's damages claims here.

Finally, Plaintiff argues that by accepting Medicaid funds from the federal government, "New York State may have [w]aived [its] 11th [A]mendment protection." (Pl. Obj. at 4.) The acceptance of Medicaid funds, however, does not constitute an express waiver by a state of its Eleventh Amendment sovereign immunity. See Yorktown Med. Lab., Inc. v. Perales, 948 F.2d 84, 88 (2d Cir. 1991); Levy v. Cohen, No. 09-CV-2734 (NGG) (LB), 2010 WL 4065607, at *4-5 (E.D.N.Y. Oct. 14, 2010).

The court therefore concludes that Plaintiff's damages claims against Defendant prosecutors should be dismissed because they are absolutely immune (whether the suit was brought against them in their official or individual capacities). The court also concludes that Plaintiff's damages against Defendant investigators in their official capacities should be dismissed because they are absolutely immune, and that to the extent Plaintiff's damages claims are brought against Defendant investigators in their individual capacities, they should be dismissed based on the investigators' qualified immunity.

III. Conclusion

Accordingly, for the reasons set forth above, the court ADOPTS IN FULL the R&R and DISMISSES the Complaint.

SO ORDERED.

Dated: Brooklyn, New York
March 17, 2015

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

8